STATE OF NEW JERSEY, EX REL. BOROUGH OF PLEAS-ANTVILLE, RELATOR, v. PLEASANTVILLE WATER COMPANY.

Argued February Term, 1908—Decided June 8, 1908.

1. A return to an alternative writ of *mandamus* will be struck out only when it is manifestly false, frivolous or calculated to embarrass or delay the remedy.

2. The return to the writ in this case, commanding a water company to perform certain alleged contractual obligations entered into by it with the borough of Pleasantville, will not be struck out.

3. The testimony taken to be used upon the application for the alternative writ cannot be used upon the motion to strike out the return, save by consent or by previous direction of this court.

---

On motion to strike out the return to an alternative writ of *mandamus*.

The alternative writ sets out in substance that whereas the borough of Pleasantville passed an ordinance authorizing the Pleasantville Water Company to lay pipes, at a depth of not less than three feet beneath the surface of the streets, for the purpose of conducting water for public and private use, which ordinance provided that at least five miles of pipe should be laid, the main supply pipe to be not less than six inches in diameter, before the water company could receive the benefits of the terms of such ordinance, and that all of the main and lateral pipes should be of size and strength sufficient to sup-

ply said borough and its inhabitants with a continuous supply of water of quality and quantity sufficient to meet all public and private requirements; and whereas the ordinance provided that the water company should construct, within the borough, a tank or tanks and a standpipe twelve feet in diameter and sufficiently large and strong to hold and at all times contain at least sixty thousand gallons of water; that the top of the standpipe shall be at least eighty feet above the main street level, measured from the curb line in the borough, and that the said tank shall be properly connected with the pipes and mains; that the water plant shall secure an adequate water pressure, which requirement will be construed to be complied with if the water company shall maintain the level of water in said standpipe at all times at least sixty feet above the highest street-level in the borough, measured from the curb line, and when the supply pumps of the said company are connected so that the water can be pumped direct to the street mains in case of fire, &c.

It sets out that the ordinance was accepted by the water company, and then sets out that the water company has not laid its pipes, in certain specified localities, three feet below the surface of the street; that the company has not provided pipes of sufficient size and strength, &c., and has not constructed a tank or standpipe within the borough of the height, dimensions and capacity prescribed by the ordinance.

The writ commands the water company to remove and replace all pipes laid less than three feet below the surface of the street; to construct a tank of the prescribed size containing the prescribed quantity of water; to furnish mains and pipes sufficient to supply the borough and its inhabitants with the prescribed quality and quantity of water; to maintain the water in the newly-erected pipes to the height of sixty feet above the curb level, and to drive artesian wells, if necessary, and to otherwise carry out all the provisions of the ordinance.

The return to the writ admits that the water company accepted the ordinance and asserts that the company has complied with the terms of the original ordinance and its supplement. It asserts that it has laid more than five miles of

water mains and pipes; that the main supply pipe was not less than six inches in diameter; that all the said pipes were laid at a depth of at least three feet below the surface of the street; that the said mains and lateral pipes were of a size and strength sufficient to supply said borough and its inhabitants with a continuous supply of water to meet all public and private requirements; that the water is of good potable quality, drawn from driven wells; that the plant is constructed and operated so as to receive an adequate water pressure; that the standard level of the water in the standpipe is at least eighty feet above the highest street level within the borough, measured from the curb line; that the supply pumps are connected so that the water can be pumped direct through the street mains in case of fire.

The return, however, asserts that the water company is not bound to furnish water for sprinkling streets or for public buildings until the relators enter into a contract with the water company.

It also states that the water company has erected a standpipe adjacent to the boundary of the borough, twenty feet in diameter and one hundred and twenty feet in height, which contains, at all times, six hundred thousand gallons of water, with a water level eighty feet above the highest street level, measured from the curb line.

Before Justices REED, PARKER and VOORHEES.

For the relator, *J. Edward Ashmead* and *Sherrerd Depue.*

For the defendant, *Eli H. Chandler.*

The opinion of the court was delivered by

REED, J. This motion to strike out the return to this alternative writ of *mandamus* can only succeed if the return is found to be manifestly false, frivolous or calculated to embarrass or delay the remedy sought. *Silverthorne* v. *Warren Railroad Co.*, 4 *Vroom* 173; *Gallager* v. *Board of Public Works of Jersey City*, 16 *Id.* 465.

The return is criticised because it states that five miles of pipe have been laid, while this fact was not denied in the alternative writ. This fact is contained, however, in the statement in the writ of the duty imposed by the ordinance, and the statement, so repeated in the return, raises no issue and does no injury.

The return is criticised also because it states that the pipe *was* six inches in diameter, and *were* laid, &c., using the past instead of the present, the objection being that the return does not show the performance of the requirement that the mains and lateral pipes should be of a strength and size sufficient, &c., but that the return only shows that the pipes *were* of a size sufficient, &c. But the charge in the writ is that the water company *has not* provided mains and lateral pipes of a size and strength, &c., and the return says that the water company *did* provide, and therefore shows performance so far as the breach of duty is charged in the writ.

So, again, the charge is that the water company has not laid its pipes at a depth of three feet beneath the ground, and the return asserts that the pipes were so laid. The return meets the assertion of a breach of duty directly.

The return is also criticised for merely stating that the supply pumps are so constructed that the water can be pumped directly to the street mains in case of fire, without stating that they are so constructed as to secure the advantage to be derived from the board of fire underwriters and adjusters by reason of the fact that the water-supply is up to the requirements for securing a reduction of the premium rates in towns having a water-supply.

The return, however, states that no duty to supply water for the extinguishment of fire arises until a contract to do so is entered into by the borough with the water company. It appearing that the execution of no such contract is asserted in the alternative writ, the return seems to be sufficient.

The charge in the writ that the water company has not erected a tank or tower within the boundaries of the borough is admitted by the silence of the return in respect to that statement, and by the statement in the return that the com-

pany has erected a standpipe adjacent to the boundaries of the borough of a capacity greater than that called for in the ordinance.

Upon this showing of the return, we do not think the return can be said to be frivolous or sham. Although the duty of the company to build a tank or tower within the borough has not been performed, it is not clear that the peremptory writ would go to compel the erection of such a structure, if, in fact, a tank had been already erected adjacent to the boundary of the borough which accomplished all the purpose for which the original plant was to be installed. Certainly, if it was erected with the knowledge or without the dissent of the municipal authorities, and for three or four years had been efficient in supplying water in accordance with the contract arising from the acceptance of the ordinance, a legal question of serious importance would arise respecting the right of the relator to compel the construction of an additional plant within the borough limits. The element of estoppel is not fully presented in the return, but it cannot be said that the return, as framed, is frivolous or sham upon its face.

The relator, however, relies upon the testimony taken to be used upon the hearing of the rule to show cause why a writ should not issue for the purpose of showing that the return is sham.

The evidence upon which the writ issues is not a part of the record, and upon demurrer to the writ, or demurrer to the return, could not be used to supply essential facts or be considered in deciding a demurrer. *Commercial Bank* v. *Canal Commissioners,* 10 *Wend.* 25; *Fairbanks* v. *Sheridan,* 14 *Vroom* 82, 85.

Nevertheless, as affidavits can be taken to be used to show the evasive or fraudulent character of a return to a peremptory writ (*State* v. *Griscom,* 3 *Halst.* 136, 138), or affidavits can be taken to be used on a motion to strike out a plea as sham, we see no reason why such testimony may not be used upon a motion to strike out the return to a writ of *mandamus.* And we see no reason why the testimony taken upon a rule to show cause should not be used, with the permission of the

court, upon such a motion; but we think that this should be only by judicial permission, with notice to the opposite party that the testimony is to be used for that purpose, so that such party may be prepared to argue the case upon that testimony, or permitted to take additional testimony if he deems it necessary.

The relator treated this testimony as a part of the record, but no judicial permission was given to so use it and no notice was given the defendant that it was to be so used.

Our conclusion is that the motion to strike out should be refused. We further think if the defendant chooses to amend his return in any respect, he may do so within ten days, upon payment of the costs of such motion to amend, and that the plaintiff may plead or demur to this return or to the amended return within ten days after the lapse of the first ten days given for the amended return.